MOORE ET AL., APPELLANTS, *v.* SMOYER, EXR., ET AL., APPELLEES.*

(No. 4590—Decided January 18, 1956.)

*Motion to certify the record overruled, May 2, 1956.

*Mr. Carl D. Sheppard* and *Mr. Howard C. Walker,* for appellants.

*Mr. Fred O. Smoyer,* for appellee Charles E. Smoyer, executor.

*Messrs. Schaffner & Evans,* for appellee Grace Evangelical & Reformed Church.

*Mr. Edwin W. Brouse,* for appellee Summit County Historical Society.

*Mr. Ernest L. Cunningham,* for appellee Dorothy M. Grosjean.

DOYLE, J. The questions here involved had their origin in the Probate Court of Summit County, Ohio, on a petition requesting the construction of the last will and testament of Carrie M. Koplin, who died testate on the 29th day of April, 1954.

On June 18, 1953, the decedent executed her will, in which, after directing the payment of her debts, she made money bequests to seventeen persons and institutions in the aggregate sum of $45,000. The residuary clause (Item XIX) is as follows:

"All the rest and residue of my estate, both real and personal, of which I shall be seized at the time of my death, including my residence at 460 Briarwood Drive, Akron, Ohio, I give, devise and bequeath in equal shares to the Grace Evangelical and Reformed Church of Akron, Ohio, and to the trustees of Heidelberg College at Tiffin, Ohio, to be used by them for such purposes as shall in the opinion of their boards of trustees or directors be deemed to promote the welfare and interest of said organizations."

Thereafter, on March 10, 1954, the decedent executed a first codicil to her will, and in it (in Item I) revoked all of the residuary clause which gave to the church and college as above shown. This codicil then continued with the words and phrases:

"And I do hereby give, devise and bequeath all of the rest and residue of my estate, both real and personal, not bequeathed under Items II to XVIII, inclusive, unto my niece, Dorothy M. Grosjean, unto her and her heirs forever."

Items II to XVIII, inclusive, mentioned in the codicil, were

the items which gave the aggregate sum of $45,000 to the seventeen persons and institutions. They included item VII, which gave $5,000 to Dorothy M. Grosjean, who is the one given the remainder in the codicil.

A second codicil was then executed a little over a month later—on April 19, 1954. This codicil reads:

### "Item I.

"I hereby devise and bequeath unto the Grace Reformed and Evangelical Church of Akron, Ohio, the sum of Ten Thousand Dollars ($10,000.00) in money, the same to be devoted to such purposes as its board of trustees may direct. The devise and bequest under this item shall become a charge upon the property, real and personal, of my residual estate.

### "Item II.

"In all other respects, I adopt and confirm the provisions of my foregoing last will and testament and of the first codicil to said last will and testament except as herein modified."

There appears in the record the following facts:

The gross assets of the estate at the time of testator's death consisted of (1) personal property valued at approximately $40,500; and (2) the residence property, valued at approximately $14,000. This real property was the residence mentioned in the first residuary clause of the will, located at 460 Briarwood Drive, Akron, Ohio. The debts and costs of administration are approximately $10,200. It is obvious from these facts that the assets of the estate, available for distribution to the legatees first mentioned (not including the $10,000 bequest to the church stated in the second codicil), are not sufficient even as to them for payment in full.

The Probate Court, upon hearing, adjudicated the matter in the following language:

"The court finds, from reading of the entire last will and testament of the decedent and the codicils thereto, that it was the intention of the decedent by Item I of the second codicil to add another pecuniary bequest to the list of legacies for which she had previously provided; and that it was the intent of the decedent in adding the second sentence to Item I of the second codicil to insure payment of the bequest to the church, in full, if

the assets of the estate were sufficient, or to prorate with the other pecuniary legatees if the assets were not sufficient.

"It is therefore the finding, order, judgment and decree of the court that Item I of the second codicil of the last will and testament of decedent created a pecuniary bequest of $10,000 to the Grace Reformed and Evangelical Church of Akron, Ohio, and that it is entitled to share pro rata with the other pecuniary legatees named in Items II to XVIII inclusive of the decedent's last will and testament, and the executor herein is ordered to make distribution of the assets of said estate as herein directed."

The plaintiffs in the Probate Court, each of whom had been bequeathed $5,000 by the will, have appealed to this court from the judgment entered. They assign the following errors:

"1. The judgment of the court is contrary to law.

"2. The judgment of the court in construing Item I of the second codicil of the will of Carrie M. Koplin as creating a pecuniary bequest of $10,000 to the Grace Reformed and Evangelical Church of Akron, Ohio, and entitling said church to share pro rata with the other pecuniary legatees named in Items II to XVIII, inclusive, of decedent's will." (*sic.*)

It is claimed by the appellants that, "there being enough money in the estate after payment of all expenses and other debts, the legatees in the will proper should have been paid in full before the payment of the church from the residuary property."

Counsel for the church state that:

"* * * it seems clear that the intention of the testatrix, by Item I of the codicil No. 2, was to simply add another general pecuniary bequest to the list of seventeen such bequests which she had previously made in the original will, and that said codicil was to insure payment of the bequest to the church in full, if the assets of the estate were sufficient, or pro rata with the other pecuniary legatees if the assets were not sufficient, before any amount as residue would be distributed to Dorothy W. Grosjean, especially since the testatrix had already given said Dorothy W. Grosjean a pecuniary bequest of five thousand dollars * * * in Item VII of her will."

If the testatrix had not made the second codicil, both the

personal and real property could properly have been consumed in paying the first seventeen legacies, and nothing would have remained for the additional gift to the residuary legatee, Dorothy W. Grosjean.

This fact must have been known to the testatrix at the time she executed the second codicil. She was in the hands of thoroughly competent counsel, and must have known the size and value of her estate, coupled with at least some knowledge that debts and administrative costs would reduce the amount for distribution.

What, then, did she intend when she executed the second codicil and gave $10,000 to a church, with the command that "The devise and bequest under this item shall become a charge upon the property, real and personal, of my residual estate"?

The general rule is well settled that, where a testator, after bequeathing pecuniary legacies, gives the residue and remainder of his real and personal estate, or uses other terms indicative of a gift of a mixed residue, the legacies are a charge on or are payable out of the residuary real estate, and, in case of a deficiency of personalty, must be paid out of the realty otherwise passing under the residuary clause.

"'* * * The rationale behind this principle appears to embody two somewhat different conceptions, some courts feeling that by commingling real and personal property the testator must be considered as having made no distinction between them in the general disposition of his estate, but, rather, regarded them as a single fund for the discharge of obligations and bequests, and others adopting the view that the particular words used in the residuary clause, such, for example, as 'rest,' 'residue,' and 'remainder,' indicate a testatorial intention to give only what is left after legacies and other charges have been paid. * * *'" 57 American Jurisprudence, Wills, Section 1487.

And see: *Clyde* v. *Simpson*, 4 Ohio St., 445; *Moore, Exr.*, v. *Beckwith's Exr.*, 14 Ohio St., 129; *Koontz* v. *Hubley, a Minor*, 111 Ohio St., 414, 145 N. E., 590; 41 Ohio Jurisprudence, Wills, Section 769, and cases therein cited; 69 Corpus Juris, Wills, Section 2501; and 42 A. L. R., 656.

This rule, of course, is not absolute. Its application depends on circumstances.

Another general rule is likewise well settled. It is:

"* * * for the purpose of determining the testamentary intention and disposition of the testator, a will and codicil thereto are to be regarded as a single and entire instrument, taking effect at the time of the testator's death. They are to be construed together as if they had both been executed at the time of making of the codicil, in the absence of a manifest intention to the contrary." 57 American Jurisprudence, Wills, Section 608, in part.

In the case before us, it seems clear that the testatrix's purpose in making the last codicil may be gained from the instrument itself. She wanted to give the church ten thousand dollars, and to accomplish her purpose made the church a general legatee. Such a legatee can be included by codicil as well as by incorporation in the original instrument, and be given the same standing as other general legatees. We hold that this is the status of the church in its relation to other legatees.

As indicated in one of the above rules, if the personal property is insufficient to satisfy general pecuniary legacies, under such language as is used in this will, the legacies then become a charge and must be paid out of the realty passing under the residuary clause.

The scrivener of the instrument before us directed only that which the rules of construction would have required, because the legacy to the church and the legacies to all of the other legatees became a charge on the realty in proportionate amounts, when it was disclosed that the personal property in the estate was insufficient to pay the pecuniary legacies. There is nothing in the language employed indicating that the real property was to be exclusively charged for the payment of the church's entire bequest.

The judgment is affirmed.

*Judgment affirmed.*

STEVENS, P. J., and HUNSICKER, J., concur.